ARANSAS PASS CHANNEL & DOCK CO.
v. SOUTHERN PRODUCTS CO.
(No. 977.)

(Court of Civil Appeals of Texas. Amarillo. April 26, 1916. On Motion for Rehearing, May 10, 1916.)

1. CONTRACTS ⊜⟾202(1)—MATTERS COVERED.
    Where a dock company and a cotton company agreed to a diversion of a cotton shipment from Port Aransas to Galveston, the dock company agreeing to accept the cotton company's claim for the difference in the transportation costs by reason of the diversion, telephone and telegraph tolls, employés' expenses, and the cost of replacing 50 bales of cotton at Galveston, concentrated elsewhere, were not recoverable by the cotton company against the dock company.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 921–928; Dec. Dig. ⊜⟾202(1).]

2. CONTRACTS ⊜⟾202(1)—MATTERS COVERED—PERFORMANCE.
    Where a cotton and a dock company agreed to divert a cotton shipment from Port Aransas to Galveston, the dock company to accept the cotton company's claim for the difference in transportation costs, the cotton company could recover of the dock company the difference between the freight rate from Portland to Port Aransas and from the same point to Galveston on 50 bales of cotton, originating in Portland, where the cotton company exercised reasonable dispatch in attending to the diversion of the cotton, the item being a difference in cost of transportation by reason of the diversion "as against Galveston sailing," as the contract read.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 921–928; Dec. Dig. ⊜⟾202(1).]

On Motion for Rehearing.

3. COMPROMISE AND SETTLEMENT ⊜⟾6(2) — BREACH OF CONTRACT—CONSIDERATION.
    When a dock company broke its contract for the shipment of a cotton company's cotton from Port Aransas by diverting the shipment to Galveston, and then solicited the diversion of the cotton company, such company and the dock company had the right, as part of the contract of diversion, before the agreement was concluded, to provide that the freight differential should be paid the cotton company by the dock company on account of the breach of the old contract.
    [Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 36–38; Dec. Dig. ⊜⟾6(2).]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

---

⊜⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by the Southern Products Company against the Aransas Pass Channel & Dock Company. From a judgment for plaintiff, defendant appeals. Reversed, and cause remanded.

Denman, Franklin & McGown, of San Antonio, and Crane & Crane, of Dallas, for appellant. Seay & Seay, of Dallas, for appellee.

HENDRICKS, J. The appellee, Southern Products Company, a corporation, sued the appellant, the Aransas Pass Channel & Dock Company, also a corporation, alleging that the dock company agreed to ship for it 800 bales of cotton to Europe for "August sailing," through Port Aransas, that while said cotton was on its way to Port Aransas, appellant canceled the freight which it had booked and advised appellee that it could not ship said cotton from Port Aransas, and to divert the same to the Port at Galveston, and that appellant would pay all damages. The alleged damages ($822.70) consisted of expenses of appellee's traveling men, of telephone and telegraph bills, difference in transportation charges, and the purchase of 50 bales of cotton at Galveston, to replace a like number, which it is alleged did not arrive in time at Galveston for August sailing from that port.

The dock company, appellant herein, was engaged in the wharfage business at Port Aransas, Tex., owning and operating docks at that place, where ships receive and unload cargoes. It had a contract with the Leyland Line, operating a steamship company, under which said Leyland Line agreed with the dock company to furnish ships at Aransas for transportation of freight, the sailings to be made at dates to be agreed upon. Under this contract the Leyland Line agreed with the dock company to furnish a ship for "August sailing," which meant that a ship would sail from Port Aransas not later than midnight of August 31, 1913.

The Southern Products Company, the appellee herein, was engaged in buying and exporting cotton, and the dock company, depending on its contract with the Leyland Line, agreed with appellee to transport 800 bales of cotton, "August sailing," to Bremen, Germany. This cotton, to be furnished by the products company, was concentrated at various interior points in Texas, and either upon the 19th or 20th of August, 1913, the products company was advised by the dock company that it could not perform its contract.

The dock company, in its answer, admitted a liability of $432.76, which comprehended the first five items alleged as damages in plaintiff's petition, but denied, however, that it agreed that it would pay all damages on account of the breach of the contract and the diversion of the cotton, but averred that the only agreement made by it with reference to said diversion was that appellant would pay only the difference in transportation costs by reason of such diversion to the Port of Galveston. In this shipment of 800 bales, which the products company was to transport to its customer in Germany, there were 50 bales concentrated at Portland, Tex., a point a short distance from Port Aransas. This shipment did not reach Galveston in time for an August sailing from that port and the costs of replacing the 50 bales at Galveston, in lieu of the Portland cotton, amounting to a difference of $150.25, and the difference in rate to Galveston against Port Aransas on this particular cotton originating at Portland, and the telephone and telegraph expenses and expenses paid to employés, are the litigated items in this suit.

The trial court peremptorily instructed the jury for the full amount of $822.70, and the dock company claims that the last items mentioned were not included in its contract made with appellant after the condition arose, and after it notified appellee that it could not fulfill the agreement to ship the cotton from Port Aransas.

It is claimed that a representative of the products company went to Aransas Pass and took up the question of diverting this cotton to Galveston, for shipment from the latter point, instead of the former. At this time some of the cotton had already arrived in Port Aransas, and some of it was under bill of lading en route to that point, and the 50 bales at Portland had not been delivered to the railroad company at that point. The defense is, as to this particular feature, that as a result of the conference between this representative and the dock company, the following letter was written:

"Aransas Pass, Texas, Aug. 22, 1913.

"Southern Products Company, Dallas, Texas. —Gentlemen: This will confirm conversation had with Mr. Goudelock (the Products Company's representative), also telegraphic correspondence and telephone conversation with Mr. Lee, relative to diversion of your cotton to Galveston for August sailing, originally booked through Port Aransas. This is done with the understanding that we are to accept your claim for the difference in transportation costs by reason of this diversion as against Galveston sailing.

"[Signed]   W. A. Scrivener, Traffic Manager.
"Cy Southern Products Co.,
San Antonio, Texas."

Goudelock was the manager of the Southern Products Company at Oklahoma City, and a cotton buyer. Mr. Lee was the manager of the branch house at San Antonio, in control of the particular territory and the shipment in question. Mr. Scrivener, traffic manager of the dock company, testified positively that he had an agreement with Mr. Goudelock for the diversion of the cotton to Galveston, booked to Port Aransas, and to pay the difference in transportation costs, and that in pursuance of the agreement he first dictated a letter in Goudelock's presence that was not satisfactory, and the letter set out herein was dictated as the final result of their understanding. After the letter was

written he either handed the original or the copy to Mr. Goudelock and mailed the other, either to San Antonio, or to the Dallas house of the appellee. We will not review the testimony in detail, but we think the court erred in taking this case from the jury, as to two of the items hereinafter discussed, in view of the alleged contract set up by the appellant.

[1] If in consequence of the diversion of the cotton from Port Aransas and the reshipment of same from Galveston, instead of the former harbor, it was understood that the dock company was to accept the products company's claim for the difference in transportation costs, by reason of said diversion, it is clear that the telephone and telegraph, and employés' expenses, aggregating $166.66, as well as the costs of replacing the 50 bales at Galveston, in lieu of the 50 bales concentrated at Portland, amounting to $150.25, are not included in said contract, and to that extent there should have been no recovery against appellant.

[2] The item of $73.03, charged against appellant as the "difference in rate to Galveston against Port Aransas, on 50 bales originating at Portland," is not entirely clear to the court. If the particular cotton was actually shipped to Galveston, under the agreement for diversion, for the purpose of clearing from that port for Germany, and appellee exercised reasonable dispatch in attending to the diversion of said cotton, and if said $73.03 really represented a difference between the freight rate from Portland to Port Aransas, and the rate from the same point of origin to Galveston, we think that item is recoverable. Said amount, in that event, would represent "the difference in transportation costs by reason of this diversion as against Galveston sailing."

If it is appellant's contention that the difference in transportation costs is confined to that difference arising only on account of such costs or freight having been actually paid, and only on cotton actually shipped to Port Aransas, and reshipped to Galveston, the contract does not so read, aided by the facts in this record. Appellant's contract originally was to ship from Port Aransas, and it necessarily knew that the freight rate from the point of concentration to Aransas Pass entered into the shipment by appellee from Aransas to the consignee at Bremen, Germany; and if the $73.03 item is one representing the difference and excess in freight from the point of concentration to Galveston, and from the same point to Port Aransas, such an item is a difference in cost of transportation by reason of the diversion "as against Galveston sailing," and should be so interpreted.

We overrule the other assignments, and reverse and remand the cause.

## On Motion for Rehearing.

In the motion for rehearing, the questions of the authority of Goudelock to make the contract discussed in the main opinion, and of nudum pactum, are raised.

It is not shown in this record where the principal place of business of the products company was located. The record suggests a Dallas house, a San Antonio branch, and an Oklahoma City house. Goudelock, with whom the alleged contract was made, was the manager of the Oklahoma house for the appellee products company, and made the contract with the dock company for the transportation of the 800 bales of cotton from Port Aransas to Germany. He testified that he accidentally heard of the withdrawal of the shipment from Aransas Pass, and then went to Corpus Christi, and from thence to Aransas Pass; but from the testimony of Lee it is inferable that he was sent to Aransas by the company to attend to the trouble. It is also inferable from the record that the Dallas and San Antonio houses participated in the matter of the diversion.

On August 21st, a telegram was sent to the Southern Products Company at San Antonio, Tex., as follows:

"Scrivener & Clark instruct us to divert your Bremen cotton to Galveston, stating that they will take care of the differential between Port Aransas and Galveston."

The Southern Products Company at Dallas, Tex., telegraphed to the dock company that their insurance policy did not cover risk on transshipments by water from Port Aransas Pass to Galveston, advising the dock company that they must provide for extra insurance, which latter company answered, conceding the suggestion. Whether this telegram was sent prior or subsequent to the writing of the letter by Scrivener, the manager of the dock company, copied in the original opinion, embodying the agreement upon which the case was reversed is not shown. This letter explicitly stated that "this will confirm conversation to-day with Mr. Goudelock," etc., and relative to the diversion, closes, "this is done with the understanding that we are to accept your claim for the difference in transportation costs," etc.

[3] It is argued that the contract between the dock company and the products company had been breached, and, the damages having accrued, an agreement for a less sum than the amount appellee would in law have been entitled to, would be the payment of a smaller sum for a larger amount, and hence without consideration.

The dock company, in law, was not required to transship the particular cotton from Galveston. It was outside the contract. It was, of course, when the original contract was breached, subject to the payment of all consequential damages on account of said breach. When they solicited the diversion of this cotton and the same was accepted by the products company for the purpose of reshipment from Galveston, the parties had the right as a part of the contract of diversion, before said agreement was actually conclud-

ed, to provide for and measure the character and quantum of damages to be paid on account of the breach of the old contract.

We think, as applied to the particular items discussed in the main opinion, the case as to those features at least should have gone to the jury, and the motion for rehearing is overruled.